# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CAROL Y. F.,[1]

    Plaintiff,

v.

MARTIN O'MALLEY,[2]
Commissioner of Social Security,

    Defendant.

CIVIL ACTION

No. 23-2499-JWL

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI)[3] benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On December 20, 2023, Mr. O'Malley was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. O'Malley is substituted for Acting Commissioner Kilolo Kijakazi as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

[3] As the Commissioner points out, Plaintiff's Brief erroneously states she sought Supplemental Security Income benefits. (Pl. Br. 1); but see, (R. 180) (Application Summary for Disability Insurance Benefits).

that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.     Background

Plaintiff protectively filed an application for SSDI benefits on October 25, 2021. (R. 17, 180-86).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erroneously discounted her subjective allegations of pain because he erroneously relied upon the unsupported conclusion that Plaintiff had worked at the heavy exertion level (as a personal care attendant).  (Pl. Br. 29-31).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

3

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The ALJ decided this case at step four of the process, finding Plaintiff capable of performing her past relevant work as an Accounting Clerk, an Office Manager, or a Collection Clerk, and did not make a step five determination.  The court addresses the error alleged in Plaintiff's Social Security Brief.

**II.   Discussion**

Plaintiff argues the record contains no evidence she ever worked at the heavy exertion level, that the Medical-Vocational Guidelines provide each finding of fact is

subject to rebuttal, and the ALJ "never gave Plaintiff a chance to rebut" the assumption she worked at the heavy exertion level. (Pl. Br. 31). She argues the record upon which the ALJ relied to assume Plaintiff had worked at the heavy exertion level was a checkbox form and "there are a number of questions that should have been asked about that form before the ALJ could rely on that form as proof that Plaintiff performed work at the 'heavy level' as defined by the regulations. Thus[,] because the ALJ did not examine this form it does not constitute substantial evidence to support the ALJ's conclusion that Plaintiff performed work at the 'heavy level.'" (Pl. Br. 32).

Addressing the standard for evaluating a claimant's allegation of symptoms, Plaintiff argues:

> The he ALJ [sic] failed to: (1) evaluate the intensity and persistence of these symptoms; (2) determine the extent to which these symptoms affected Plaintiff's ability to perform work-related activities; (3) consider the seven factors set forth in the regulations and SSR 16-3p, 2016 SSR LEXIS 4 in evaluating the intensity, persistence, and limiting effects of these symptoms; and (4) provide specific reasons, clearly articulated, for the weight given to Plaintiff's allegations.
>
> In the two-step process required for an ALJ to evaluate a Plaintiff's subjective allegations, the ALJ here failed at step two. At step one, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her pain. At the second step, however, the ALJ's analysis is insufficient. As discussed, the ALJ failed to include any mental limitations in his RFC assessment. This finding was the prerogative of the ALJ, but, the regulations and Tenth Circuit case law require that an ALJ's RFC be based on the entire case record, including the credibility of the Plaintiff's subjective complaints.

Id. Plaintiff claims the ALJ never explained his conclusions about her subjective allegations, linked his conclusions to specific medical evidence, or "explained why,

specifically, an inconsistency existed," but "simply picked page numbers from Plaintiff's Medical Records and he does not explain how these pages support his conclusion." Id.

In response, the Commissioner argues the ALJ correctly evaluated Plaintiff's allegations of limitations and assessed Plaintiff's limitations. He points out that the record does, in fact, contain evidence Plaintiff has performed heavy work in the form of Plaintiff's Work History Report, filled out by her own hand. (Comm'r Br. 13). He argues, Plaintiff was represented by an attorney at the hearing who, at any time, could have rebutted Plaintiff's assertion that she lifted "100 lbs. or more" in her job as a Personal Care Attendant—impliedly for one-third of a workday or more. Id. (citing R. 219-20) (lifted "Less than 10 lbs." frequently. ("from 1/3 to 2/3 of the workday.")). He argues the exertion level of Plaintiff's work as a Personal Care Attendant is irrelevant because the ALJ did not find her capable of that work and, in any case, Plaintiff does not point to evidence demonstrating that she cannot perform sedentary work, the exertion level of the past relevant work of which the ALJ found she is capable. Id. 14.

**A.     Standard for Evaluating Plaintiff's Allegations of Symptoms**

The court's review of an ALJ's evaluation of Plaintiff's allegations of symptoms is deferential. Such determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations[4] are peculiarly the province of the finder of

---

[4] Talley, Broadbent, Wilson, Hackett, Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a

6

fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

The framework for a proper evaluation of Plaintiff's allegations of symptoms is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987)  An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework).  The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures the claimant has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from

---

claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on March 15, 2023, when this case was decided.  Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii). The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner. Luna, 834 F.2d at 165-66. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

**B.** **Analysis**

Plaintiff has simply not met her burden to show error in the Commissioner's decision in this case. Plaintiff's argument that there is no record evidence she ever worked at the heavy exertion level is without merit. As the Commissioner pointed out, Plaintiff herself completed her Work History Report, in which she indicated she lifted 100 pounds or more in her work as a Personal Care Attendant. (R. 219-20). As Plaintiff pointed out, the Medical-Vocational Guidelines provide that the facts upon which a decision based on the Guidelines relies are subject to rebuttal by the claimant. 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(a). But the Medical-Vocational Guidelines are applied only where a person "is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. § 404.1569. This case was decided at step four when Plaintiff was determined to be capable of doing past relevant work and the Guidelines are, therefore, not applicable here. Moreover, to the extent rebuttal would

8

even be relevant to change the record evidence present here, counsel had ample opportunity when developing the record, including at the ALJ's hearing, to argue that Plaintiff's assertion, that her work as a Personal Care Attendant involved heavy exertion, was erroneous or mistaken. It was not error for the ALJ to find that Plaintiff's work as a Personal Care Attendant involved heavy exertion.

Given this finding, Plaintiff is left with no argument of error in the ALJ's evaluation of Plaintiff's allegations of disabling symptoms. Plaintiff's argument the ALJ failed to evaluate the intensity and persistence of her symptoms, determine how much they affected Plaintiff's ability to perform work-related activities, consider the regulatory factors for evaluating them, and provide specific reasons, clearly articulated, for the weight given to Plaintiff's allegations, also fails. For example, the ALJ found that Plaintiff's allegations are consistent with an inability to work at the heavy exertional level but are inconsistent with negative straight leg raise testing, a normal gait, normal motor function, intact reflexes and sensations (that is, inconsistent with sedentary work), and with Plaintiff declining pain injections since August 2022 coincident to allegedly worsening hip pain. (R. 24) (citing1F/13; 9F/116 and 131; R. 313, 550, 565). Also, Plaintiff has normal mental function and reported no mental symptoms, contrary to her testimony. Id. (Citing, E.g., 1F/12, 13; 9F/121 and 130; R. 312, 555, 566). Later, the ALJ pointed out:

> She also has no contemporaneous complaints [while] in care suggesting she needs to lay down [sic], elevate her feet and use motorized carts to shop, as she alleged to occur since October 2020, as well. Instead, she reports through August 2022 that her chronic pain symptoms are adequately controlled with conservative care, suggesting her symptoms when not

9

> working at the heavy level are not as severe for 12 consecutive months since her alleged onset date (E.g., 9F/3, 4, 6, 23 and 43[; R. 437, 438, 440, 457, 477]).
>
> Otherwise, the claimant consistently reports increased pain when standing and walking, rather than when sitting until October 2022, again after her recent election to forgo pain injections despite her seeming good response to pain injections in the past when limiting herself to sedentary activities (E.g., 1F/3, 5; 9F/23, 33, 43, 44, 121 compared to 9F/130[; R. 303, 305, 457, 467, 477, 478, 555, c.f. 564]).

(R. 24). These are just a sampling of the reasons and explanation provided by the ALJ in explaining his evaluation of and discounting of Plaintiff's allegations of disabling symptoms. (R. 23-26). Yet, this sampling is well-supported by the record evidence cited and makes it abundantly clear the ALJ has met the deferential standard to justify his evaluation of Plaintiff's allegations of symptoms.

Plaintiff has shown no error in the Commissioner's final decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated October 24, 2024, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**